**Enoch VANDERPOOL, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–657.**

United States Court of Veterans Appeals.

Sept. 24, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, veteran Enoch Vanderpool, appeals from a May 23, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for headaches, and denying increased ratings for his service-connected residuals of an injury to the supraorbital nerve (currently rated at 10% disabling), for residuals of a lumbar fracture (currently rated at 10%), and for pes planus (currently rated at 10%). *Enoch Vanderpool*, BVA 90–16536 (May 23, 1990). The Board's decision will be affirmed in part, and vacated and the matter remanded in part.

### I. BACKGROUND

The veteran served in the U.S. Army from August 1942 to October 1943, and in the U.S. Air Force from February 1952 to January 1953. Service connection for pes planus was established after his first period of service. R. at 56–57. On November 26, 1952, he was injured in an automobile accident, resulting in, among other things,

a brain concussion, fractured lumbar vertebrae, and severance of the supra orbital nerve in the forehead above the right eye. R. at 28. In June 1953, a Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) awarded service connection for residuals of an injury to the supraorbital nerve, at a 10% rating, and for residuals of a fracture of the lumbar vertebrae, at a 0% rating, and denied service connection for residuals of a head injury. R. at 56–57. The RO also assigned a 0% rating for the veteran's pes planus, which had been rated at 10% disabling prior to his second term of service. R. at 56–57.

In 1975, the veteran's service-connected ratings for his pes planus and residuals of a lumbar fracture each were increased to a 10% rating, and his 10% rating for residuals of an injury to the right supraorbital nerve was maintained. In September 1989, the RO maintained those ratings, and denied service connection for headaches, which the veteran claimed had resulted from the head trauma suffered in the in-service auto accident. R. at 206–07. On appeal, the BVA concluded that the veteran was not entitled to more than a 10% rating for any of the three service-connected conditions appealed. As to the headache condition, the Board stated that the 1953 RO decision denying service connection for residuals of a head injury was final, and that the evidence submitted since that decision did not demonstrate that the condition was related to his service. *Vanderpool*, BVA 90–16536, at 8–9. Appeal to this Court followed.

## II. DISCUSSION

### A. *Disorder Manifested by Headaches*

■ In denying service connection for a headache condition, the Board apparently failed to apply the proper legal standard for reopening a previously and finally denied claim. Pursuant to 38 U.S.C. § 5108 (formerly § 3008), a previously and finally disallowed claim must be reopened by the Secretary of Veterans Affairs (Secretary) when "new and material evidence" is presented or secured with respect to that claim.

*See* 38 U.S.C. § 7104(b) (formerly § 4004). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991).

■ "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). For evidence to be "material", it must be "relevant and probative" and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid; Jones, supra.* The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1) (formerly § 4061). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.* For the reasons set forth below, the Court concludes that the veteran submitted new and material evidence to reopen his claim for service connection for a headache condition.

The veteran suffered a brain concussion as a result of the in-service auto accident on November 26, 1952. R. at 32. On December 16, 1952, when the veteran was transferred from a private hospital to an Air Force Hospital, the concussion was stated to have been "[h]ealed on admission". R. at 32. At his January 15, 1953, separation physical, the veteran indicated that he did not suffer from frequent or severe headaches or dizziness. R. at 45. On May 21, 1953, at a VA examination for disability evaluation, the veteran reported having frequent nervous spells, dizziness, and headaches since the accident. R. at 49, 53. The examiner at that time stated that there was no evidence of serious brain inju-

ry. R. at 55. In its June 1953 decision, the RO denied service connection for residuals of a head injury. R. at 57.

Private and VA medical reports from 1955, 1957, and 1958 reflect the veteran's continued complaints of constant headaches and dizziness. R. at 58, 62, 64, 67. A VA special neurological examination in 1958 revealed no neurological disease other than the injury to the supraorbital nerve. R. at 67. On a December 28, 1964, VA medical certificate, however, the examining physician diagnosed the veteran as suffering from "Chronic Brain Syndrome, post traumatic manifested by psychosomatic complaints". R. at 69. VA medical records from 1975 and 1984 also reflect the veteran's complaints of headaches and dizziness. R. at 72, 74, 91, 100. On the report of an October 26, 1987, VA neurological examination, the examiner noted an impression of "post-traumatic headache". R. at 105. At a November 4, 1988, hearing before the RO, the veteran testified under oath that he had suffered headaches since the auto accident, and that they had gotten gradually worse each year. R. at 110.

Because the evidence submitted since the prior final RO decision in 1953 included diagnoses of post-traumatic chronic brain syndrome and post-traumatic headaches, and evidence that the veteran has suffered headaches continually since the in-service accident, that evidence is relevant and probative and creates a reasonable possibility of changing the outcome of the prior denial of his claim. Therefore, that evidence was "new and material" and the Secretary was required to reopen the claim and adjudicate it on the basis of all the evidence, both old and new. *See Jones, supra; Manio, supra.*

■ In adjudicating that claim, the BVA was required to base its decision on "consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a) (formerly § 4004); *see also* 38 C.F.R. § 3.303(a) (1991). The Board was also required to provide a statement of the reasons or bases for its findings and conclusions, including its evaluation of all evidence, old and new,

submitted by or on behalf of the claimant and its evaluation of the applicability of pertinent law and regulation. *See* 38 U.S.C. § 7104(d)(1) (formerly § 4004); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592–93 (1991); *Gilbert v. Derwinski*, 1 Vet. App. 49, 59 (1990). Although the BVA decision is ambiguous as to whether the Board considered only the new evidence, an examination of the record reveals that the Board failed to discuss pertinent evidence in the record, as well as potentially applicable provisions of law and regulation.

■ In its May 1990 decision, the Board listed the December 1964 VA medical certificate among the evidence it considered, yet it did not mention or discuss the diagnosis of post-traumatic chronic brain syndrome contained on that medical certificate. *Vanderpool*, BVA 90–16536, at 3. Pursuant to the reasons or bases requirement of section 7104(d)(1), the Board must provide "an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran ... [and] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert, supra.* The Board failed to meet this requirement with respect to the December 1964 VA medical certificate, which tends to support the veteran's claim for service connection.

Additionally, the Board failed to consider the potentially applicable provisions of law and regulation providing for service connection for chronic conditions becoming manifest to a 10% degree within one year after separation from service. *See* 38 U.S.C. §§ 1112(a)(1), 1101(3) (formerly §§ 312, 301); 38 C.F.R. §§ 3.307(a), 3.309(a) (1991). Pursuant to those provisions, a chronic disease becoming manifest to the requisite 10% degree within the presumption period (one year for chronic conditions) will be service connected, notwithstanding that there is no official record of evidence of such condition during service. Moreover, 38 C.F.R. § 3.307(b) and (c) provide that the condition need not be diagnosed as chronic during the presumption period, but rather that there need be during the presumption period only evidence of sympto-

matology which, in retrospect, may be identified as manifestations of the chronic condition to the requisite 10% degree. Section 3.307(b) states that the principles of 38 C.F.R. § 3.303(b) (1991), regarding chronicity and continuity of symptomatology, will be considered in making this determination.

█ In this case, there is evidence that the veteran had suffered frequent headaches within the one-year presumption period following separation from his second period of service, and that he had suffered such headaches regularly since that time. In 1964, he was diagnosed with post-traumatic chronic brain disease, which, under VA regulations, is considered an organic disease of the central nervous system. *See* 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8045 (1991). Pursuant to 38 U.S.C. § 1101(3) and 38 C.F.R. § 3.309(a), organic diseases of the nervous system are considered chronic diseases which are subject to presumptive service connection under the one-year presumption provisions. Section 1112(a)(1), which by its terms applies only to conditions manifested within one year after separation from service during a period of war, is made applicable to this veteran (because of his post–1946 service) by 38 U.S.C. § 1137 (formerly § 337), which was enacted in 1966.

█ "Once a veteran raises a well grounded claim to which a [statute or] regulation could reasonably apply, the BVA must apply that [statute or] regulation or give the reasons [or] bases explaining why it is not applicable." *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990); *see also Schafrath, supra.* This is so even though the veteran does not specifically identify the statutory and regulatory provisions that are potentially applicable to his claim. *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–40 (1992) (en banc) (*Douglas II*); *Douglas v. Derwinski,* 2 Vet.App. 103, 109 (1992) (*Douglas I*); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990). Therefore, the Board was required to consider the veteran's claim for service connection of his headache condition under the statutory and regulatory presumption periods in accordance with the foregoing analysis. Remand will be required to allow the Board to adjudicate that issue.

### B. Increased Rating for Residuals of Lumbosacral Fracture

█ The Board failed also to provide an adequate statement of the reasons or bases for its denial of an increased rating for the residuals of the lumbosacral fracture. An October 1987 VA examination reported that the range of motion in the veteran's back was limited to extension of 10 degrees, lateral flexion of 25 degrees, lateral rotation of 30 degrees, and forward flexion of 40 degrees. R. at 103. In its "DISCUSSION AND EVALUATION", the Board stated only: "With regard to the veteran's lumbar spine disability, the evidence shows that he has only slight limitation of motion." *Vanderpool,* BVA 90–16536, at 8. The Board, therefore, concluded that he was entitled to no more than a 10% disability rating under 38 C.F.R. § 4.71a, DC 5292. However, the Board's brief statement fails to explain why it considered the recorded limitations of motion in the veteran's back to be no more than "slight". Such a conclusory statement, without supporting analysis and explanation, is inadequate to explain the decision to the veteran or to facilitate judicial review and thus does not comply with the requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert,* 1 Vet.App. at 57; *see also Shoemaker v. Derwinski,* 3 Vet. App. 248, 253–54 (1992) (Board erred in not explaining why higher rating category not chosen); *Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991) (same); *Wilson v. Derwinski,* 1 Vet.App. 139, 140 (1991) (same).

█ Additionally, the Board failed to consider and discuss the applicability of 38 C.F.R. § 4.40 (1991), which provides for rating of musculoskeletal conditions on the basis of functional loss due to pain. *See Schafrath,* 1 Vet.App. at 591–93. The Board must " 'review all issues which are reasonably raised from a liberal reading' " of "all documents or oral testimony submit-

ted prior to the BVA decision", *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (quoting *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991)); *see also Douglas II, supra; Douglas I, supra; Schafrath,* 1 Vet.App. at 592–93; *Akles, supra; Payne, supra.* In his November 1988 sworn oral testimony, the veteran testified that he was unable to perform certain actions and motions due to the pain in his back. R. at 108–09. Additionally, several of the medical examination reports of record refer to the veteran's complaints that he is disabled due to the pain in his back. R. at 95, 103, 105. Therefore, the Board was required to consider the applicability of section 4.40 and to explain its determination as to whether the veteran was entitled to an increased rating on the basis of functional loss due to pain under that regulation. *See Schafrath, supra.* In doing so, the Board must evaluate the veteran's sworn testimony regarding his disability due to back pain. *See Cartright v. Derwinski,* 2 Vet.App. 24, 25–26 (1991) (BVA must treat sworn testimony as evidence); *Hatlestad v. Derwinski,* 1 Vet. App. 164, 170–71 (1991) (same).

### C. Increased Rating for Pes Planus

█ The Board denied the veteran's claim for an increased rating for pes planus because it concluded that the evidence did not support a higher schedular rating, and further stated that "the findings on examination do not demonstrate that he [h]as significant functional disability due to the pes planus." *Vanderpool,* BVA 90–16536, at 8. The Board failed to discuss the veteran's sworn testimony that he had severe pain in his feet, and failed to discuss the applicability of section 4.40, regarding functional loss due to pain. For the same reasons set forth in part *B.,* above, in relation to the veteran's back disability claim, this claim will be remanded for the Board to consider the veteran's testimony, along with all evidence of record, and to provide reasons or bases for its evaluation of that evidence in relation to the schedular rating for pes planus and the provisions of section 4.40.

### D. Increased Rating for Residuals of Injury to Right Supraorbital Nerve

█ In denying the veteran's claim for an increased rating for his residuals of an injury to the supraorbital nerve, the Board noted that the evidence revealed some hypalgesia (numbness) associated with that condition, but that the symptoms did not result in disability consistent with severe incomplete paralysis (the schedular criterion for a higher rating, 38 C.F.R. § 4.124a, DC 8205). *Vanderpool,* BVA 90–16536, at 8. The Board did not specifically discuss the veteran's testimony, in which he stated that he sometimes had trouble keeping food in his mouth when eating. However, it is apparent from its recitation of the evidence that the Board considered that evidence, and the Board's statement that his "current symptoms" do not result in severe incomplete paralysis provides an adequate, if somewhat cursory, explanation of the Board's evaluation of that evidence. Pursuant to 38 U.S.C. § 7261(a)(4) (formerly § 4061), the Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them". *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Here, the Court finds a plausible basis for the BVA's denial of an increased rating for disability of the right supraorbital nerve. Therefore, that part of the BVA's decision will be affirmed.

### III. CONCLUSION

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's brief, the Court holds that the appellant has not demonstrated that the BVA committed error with respect to the claim for an increased service-connected rating for disability of the right supraorbital nerve, in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C. §§ 7252, 5107(b),

7104(d)(1), 7261 (formerly §§ 4052, 3007, 4004, 4061) and the analysis in *Gilbert*. However, the Court holds that the Board did commit error, requiring remand, in its denial of service connection for a condition manifested by headaches and in its denial of increased ratings for residuals of fractured lumbosacral vertebrae and for pes planus. The Court further holds that summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990).

The Secretary's motion for summary affirmance is granted in part and denied in part. The Court affirms the May 25, 1990, BVA decision as to the denial of the claim for an increased disability rating for residuals of a injury to the supraorbital nerve. However, the Court vacates the decision in part and remands the matter to the Board for prompt readjudication of the veteran's claims for service connection for a disorder manifested by headaches and for increased ratings for residuals of fractured lumbosacral vertebrae and for pes planus. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the appellant will be free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet. App. 129, 140–41 (1992). In view of the disposition herein, the appellant's motion for leave to file a response to the Secretary's motion for summary affirmance is denied. A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which that new decision is mailed to appellant.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.