Melrose T. JONES, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 91–1611.

United States Court of Veterans Appeals.

Oct. 22, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, World War II era veteran Melrose T. Jones, appeals from a June 25, 1991, decision of the Board of Veterans' Appeals (BVA or Board) increasing from 50% to 70% his disability rating for his service-connected anxiety neurosis with depressive features. *Melrose T. Jones*, BVA 91–18520 (June 25, 1991). The appellant, seeking reversal, asserts that the Board erred in failing to assign a 100% schedular rating for his anxiety neurosis, and in refusing to adjudicate his claim for a total disability rating on the basis of individual unemployability due to his service-connected disability. The Secretary of Veterans Affairs (Secretary) concedes that the Board erred in failing to decide the individual unemployability claim and that remand for adjudication of that claim is appropriate. However, the Secretary argues that the Board did not commit any prejudicial error in denying a schedular rating in excess of 70% for the appellant's anxiety neurosis and that, therefore, the Board's decision should be affirmed as to that issue. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–

26 (1990). The decision will be affirmed in part and vacated and remanded in part.

## I. BACKGROUND

The veteran had active service from April 1941 to October 1943. R. at 1. Service connection for the veteran's psychiatric disorder has been in effect since 1950, when it was rated at 0% disabling. Supp.R. at 1. In a December 1975 decision, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) awarded the veteran a 70% disability rating for his anxiety neurosis and a total disability rating based on individual unemployability due to that condition. Supp.R. at 8–9. In a December 1982 decision, the RO reduced the disability rating to 50% and severed entitlement to a total disability rating, stating that a substantial amount of the veteran's symptomatology was related to a non-service-connected personality disorder, and that he was not unemployable due solely to his service-connected psychiatric disability. Supp.R. at 10–12.

In August 1988, the veteran submitted a claim for an increased rating for his service-connected psychiatric condition, asserting that his service-connected disability had increased and had rendered him unemployable. R. at 58, 63. At an October 1989 hearing before the RO, the veteran and his son testified under oath regarding the severity of the veteran's disability due to his service-connected psychiatric disorder. R. at 93–117. The medical evidence of record includes VA psychotherapy reports from 1984 to 1988 (R. at 119–41); a February 1989 VA psychiatric examination report diagnosing the veteran with "paranoia" and mild social and vocational impairment (R. at 70–72); and the report of a VA hospitalization from June 21 to August 4, 1989, for psychiatric and physical problems, on which the treating physician noted that the veteran had received many different types of medication, including "major tranquilizers and anti-depressants" (R. at 142–43). Additionally, the veteran was given a VA psychiatric examination in July 1990, and was diagnosed with organic brain syndrome, bipolar disorder, and paranoid personality. R. at 161–63. His social and vocational impairment was diagnosed as "moderate to severe", and the examiner noted that the veteran had been on several types of medication at that time, including Prozac, Mellaril, Cogentin, and Benadryl. *Ibid.*

In an October 1990 decision, the RO awarded a temporary 100% rating for "anxiety neurosis with history of depressive features" pursuant to 38 C.F.R. § 4.29 (1991) for the period of June 21 to August 31, 1989, due to his hospitalization, but denied a permanent rating in excess of 50% and a total rating based on individual unemployability. R. at 167–69. The veteran appealed those denials to the BVA.

In its June 1991 decision, the BVA expressly refused to consider the claim for a total disability rating based on individual unemployability, stating: "38 C.F.R. [§] 4.16 was amended to provide that total disability ratings for compensation based on individual unemployability would not be applicable in cases in which the only compensable service-connected disability was a psychiatric disorder, and[ ] such psychiatric disorder precluded a veteran from securing or following a substantially gainful occupation." *Jones,* BVA 91–18520, at 2. With regard to the claim for an increased disability rating, the Board stated that the VA psychiatric examination reports in the record showed that "the veteran suffers from chronic depression, does not socialize with other people, experiences domestic difficulties, and has suffered from suicidal ideation". *Id.* at 5. The Board noted that, according to the most recent VA psychiatric examination, the veteran had "demonstrated satisfactory control of his mental faculties, [but] it was clear that he was severely depressed and felt hopeless and worthless", and that he had been in receipt of "substantial quantities of medication to stabilize his depression and other psychiatric symptoms." *Ibid.* The Board concluded that the veteran was entitled to a 70% rating for his anxiety neurosis upon application of 38 C.F.R. § 4.7 (1991) (when there is a question as to which of two evaluations applies, the higher will be assigned if the

disability more nearly approximates the criteria for that evaluation). *Jones*, BVA 91-18520, at 5. In discussing the award of a 70% rating, the Board stated that unemployability had not been demonstrated. *Ibid.*

## II. ANALYSIS

█ The Board's refusal to adjudicate the veteran's individual unemployability claim was based upon an erroneous view of the applicable regulatory provisions. Contrary to the Board's assertion, 38 C.F.R. § 4.16(c) (1991) clearly states that a 100% disability rating (a schedular one) will be assigned when "the only compensable service-connected disability is a mental disorder assigned a 70 percent evaluation and such mental disorder precludes a veteran from securing or following a substantially gainful occupation." *See Murincsak v. Derwinski*, 2 Vet.App. 363, 367 (1992); *Gleicher v. Derwinski*, 2 Vet.App. 26, 27–28 (1991); *Swan v. Derwinski*, 1 Vet.App. 20, 22 (1990). The veteran adequately raised to the Board a well-grounded claim for a total disability rating under section 4.16(c), and the Board, therefore, was required to adjudicate that claim. *See Collier v. Derwinski*, 2 Vet.App. 247, 250 (1992) (BVA erred by failing to consider application of section 4.16(c)); *Snow v. Derwinski*, 1 Vet.App. 417, 419 (1991) (same); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (Board must address all issues reasonably raised to it by appellant). Remand is thus required for the Board to undertake any necessary evidentiary development pursuant to 38 U.S.C. § 5107 (formerly § 3007) and 38 C.F.R. § 3.159 (1991) and to adjudicate that claim.

█ In awarding a 70% disability rating for the veteran's anxiety neurosis, the Board failed to provide an adequate statement of the reasons or bases for its conclusion that he was not entitled to a 100% schedular rating. Section § 7104(d)(1) (formerly § 4004) of title 38, U.S.Code, requires the Board to provide an adequate statement of "the reasons or bases for [its] findings and conclusions on all material issues of fact and law presented on the record". *See Gilbert v. Derwinski*, 1 Vet. App. 49 at 56–57 (1990); *Simon v. Derwinski*, 2 Vet.App. 621, 624 (1992). The "reasons or bases" requirement obligates the Board to "explain, in the context of the facts presented, the rating criteria used in determining the category into which the veteran's symptoms fall." *Shoemaker v. Derwinski*, 3 Vet.App. 248, 253 (1992); *see also Ohland v. Derwinski*, 1 Vet.App. 147, 150 (1991). Where, as here, the claimant requested an increase in his then 50% rating, the Board was required to explain why his symptoms did not fit the criteria for a 100% rating. *See Shoemaker, supra.* Therefore, remand is required for the Board to consider entitlement to a 100% schedular rating and to explain its analysis and conclusions on that issue.

█ The appellant, in his brief, asserts that all the evidence of record establishes that he meets the criteria for a 100% schedular rating and that, because there is no contradictory evidence, the Court should reverse as clearly erroneous the Board's denial of a 100% rating and award him a 100% rating. The Board's determinations as to the veteran's levels of impairment under the applicable regulatory rating criteria are findings of fact, which this Court reviews under a "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4) (formerly § 4061); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). Pursuant to that standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [it] cannot overturn them". *Gilbert*, 1 Vet.App. at 53. Moreover, where the claimant's evidence clearly supports an award of the benefit sought by the claimant and denied by the Board and stands unrebutted by any competent evidence of record, the Court will reverse the Board's denial of the claim as clearly erroneous. *See Hanson v. Derwinski*, 1 Vet.App. 512, 516–17 (1991); *Meister v. Derwinski*, 1 Vet.App. 472, 473–74 (1991).

The regulatory criteria for a 100% rating for anxiety neurosis require the following symptoms:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic[ ] symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities, such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

38 C.F.R. § 4.132, Diagnostic Code (DC) 9400 (1991). Counsel for the appellant asserts that the three sentences of this diagnostic code provision establish three definite criteria for an award of a 100% rating, and that the unrebutted evidence of record clearly establishes that the appellant meets those criteria. Counsel states that the first criterion—"virtual isolation in the community"—is conclusively met by a psychiatric evaluation report and the sworn testimony of the appellant and his son, all of which state that the appellant no longer interacts with other persons and no longer communicates with his friends. Counsel asserts that the third criterion—unemployability— is established by the sworn testimony of the appellant and his son that the appellant retired due to service-connected disability and by a psychiatric evaluation report stating that the appellant had not worked since 1973.

As to the second criterion—psychoneurotic "symptoms bordering on gross repudiation of reality" resulting in "profound retreat from mature behavior"—the appellant's counsel asserts that the unrebutted evidence establishes "symptoms bordering on gross repudiation of reality", but concedes that "profound retreat from mature behavior" is not conclusively established. He argues, however, that the unrebutted evidence is nevertheless sufficient to establish that the Board's denial of a 100% rating is clearly erroneous. In support of that assertion, he states that the Board was required to presume that the veteran's actual condition was more severe than shown by the evidence of the veteran's severe symptoms, because the veteran's several

medications should be presumed to have reduced the severity of his symptoms. Counsel further states that by clearly satisfying two of the three regulatory criteria for a 100% rating, the veteran has clearly established entitlement to that rating, in light of 38 C.F.R. § 4.7 (1991) (higher of two evaluations).

█ Because the Board failed to discuss the veteran's evidence in the context of the criteria for a 100% schedular rating, and to provide any explanation of the basis for its decision, the Court is unable to determine whether that basis was plausible. See Gilbert, 1 Vet.App. at 57 (bare conclusion, without analysis, not "clear enough to permit effective judicial review"). The evidence that the veteran retired due to service-connected disability is probative evidence of unemployability which the Board must consider, but the determination of whether that evidence establishes that the veteran is "unemployable" is a fact determination which must be made by the Board in the first instance. See 38 U.S.C. § 7261(c) (formerly § 4061); Webster v. Derwinski, 1 Vet.App. 155, 159 (1991). Similarly, the evidence of the veteran's isolation and psychoneurotic symptomatology is probative evidence which the Board must consider, but the determination whether those symptoms constitute "virtual isolation in the community" and "[t]otally incapacitating psychoneurotic[ ] symptoms bordering on gross repudiation of reality ... resulting in profound retreat from mature behavior" are findings of fact to be made by the Board in the first instance. See ibid. Furthermore, although it is likely that the severity of the veteran's condition may be masked by his many medications, the determination whether his condition, but for the medication, is sufficiently severe to warrant a 100% rating is also a question of fact which must be resolved initially by the Board. Because the Board has failed to make express findings of fact on those issues, and to explain its reasons or bases for such findings, the record does not presently "permit effective judicial review" on the appellant's contention that the Board's denial of a 100% rating was with-

out a plausible basis. *Gilbert,* 1 Vet.App. at 57. Therefore, remand is required for the Board to make such express findings and to state the reasons or bases for them.

■ The Court agrees with the appellant's contention that he need not conclusively satisfy all the criteria within the letter of the applicable DC rating provision in order to establish entitlement to a 100% rating. The Secretary's regulations provide:

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances.

38 C.F.R. § 4.21 (1991). On remand, the Board will be required to consider the appellant's evidence in light of the provisions of section 4.21, to determine, in light of section 4.7, whether his disability picture "more nearly approximates" the criteria for a 100% rating, and to apply the benefit-of-the-doubt rule of 38 U.S.C. § 5107(b) (formerly § 3007) and 38 C.F.R. § 3.102 (1991).

Finally, because the medical evidence of record contains numerous different, and possibly conflicting, diagnoses, and because none of that evidence indicates how much of the veteran's disability is due to his service-connected condition and how much is due to his non-service-connected condition(s), the Board on remand must provide for a new psychiatric examination which takes into account the veteran's prior medical records in order to seek to reconcile any conflicting diagnoses and to determine the level of the veteran's disability due to his service-connected disability. *See* 38 C.F.R. § 4.1 (1991) (examiner must view disability in relation to its history); 38 C.F.R. § 4.2 (1991) (examination reports containing insufficient detail must be returned as inadequate for rating purposes); 38 C.F.R. § 4.13 (1991) (in situation of changed diagnosis, rating board's "aim should be the reconciliation and continuance of the diagnosis or etiology upon which service connection for the disability had been granted"); 38 C.F.R. § 4.128 (1991) (rating boards encountering a change of diagnosis must exercise caution in determining whether the change represents only a progression of earlier diagnosis, error in earlier diagnosis, or a disease entity independent of the service-connected psychiatric disorder); *see also Wilson v. Derwinski,* 2 Vet.App. 16, 21 (1991) (additional examination required); *EF,* 1 Vet.App. at 326 (same); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991) (same).

### III. CONCLUSION

Upon consideration of the record, the appellant's brief, and the Secretary's motion for summary affirmance, the Court vacates in part the June 25, 1991, BVA decision to the extent that it denied a disability rating in excess of 70% and failed to adjudicate the individual unemployability claim and remands the record to the Board for prompt readjudication in accordance with this decision and issuance of a new decision fully supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a) (formerly § 4004), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). On remand, the veteran will be free to submit additional evidence and argument. *See Quarles v. Derwinski,* 3 Vet. App. 129, 132 (1992). The Court affirms the June 25, 1991, BVA decision to the extent that it increased the veteran's service-connected disability rating from 50% to 70%. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.