**William H. TOBIN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1053.**

United States Court of Veterans Appeals.

Submitted June 11, 1991.

Decided Dec. 18, 1991.

William H. Tobin, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., and Adrienne Koerber, Springfield, Va., were on the pleadings, for appellee.

Before FARLEY, IVERS and STEINBERG, Associate. Judges.

IVERS, Associate Judge:

Appellant, William H. Tobin, appeals from a June 4, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for arthritis of the left knee, secondary to a service-connected cavus deformity of the left foot. The BVA found that the evidence submitted since its prior decision (August 1986) failed to present a new factual basis for allowing service connection. The Court finds that the evidence submitted by appellant is new and material under 38 C.F.R. § 3.156 (1991) and *Colvin v. Derwinski*, 1 Vet.App. 171 (1991). Therefore, the claim should have been reopened pursuant to *Manio v. Derwinski*, 1 Vet.App. 140 (1991). However, after a careful reading of the BVA decision, it is apparent that appellant's claim was not reopened and fully reviewed in accordance with applicable requirements. Therefore, we remand the case to the BVA for reconsideration of all relevant evidence, issues, and regulations and readjudication in a manner consistent with this opinion.

## I. BACKGROUND

Appellant was on active duty in the United States Army from January 4, 1943, to February 21, 1946. He was listed on Daily Sick Reports from June 5, 1943, to July 15, 1944, from September 2, 1944, to October 24, 1944, and from December 19, 1944, to April 10, 1945, as receiving dispensary treatment for undisclosed ailments. R. at

14. Appellant was also hospitalized from December 1944 to January 1945, and again from January 1945 to February 1945, for unidentified conditions which were identified as having existed prior to service. *Id.*

Appellant has had a number of prior rating decisions and BVA decisions leading up to the decision currently before this Court. In December 1975, a rating decision denied service connection for a disability described only as arthritis. R. at 11. In a later BVA decision, dated June 9, 1977, the Board remanded appellant's arthritis claim to the Regional Office to gather additional information. *Id.* at 11–12. After further development, appellant's claim came back before the Board and, on April 21, 1978, was again denied, this time service connection was denied for multiple joint arthritis. R. at 16.

After reopening his claim in either 1981 or early 1982, appellant was awarded service connection for pes cavus deformity of the left foot in a BVA decision dated March 5, 1982. R. at 34. He was subsequently granted a twenty-percent disability rating by a rating decision dated May 3, 1982. *Id.* Appellant gathered additional medical information which suggested that his osteoarthritis of the spine, hips, knees, and feet were related to the pes cavus deformity of the left foot. However, appellant was denied service connection for osteoarthritis, multiple joints, and varicose veins in his left leg, all of which appellant contended were secondary to the left pes cavus. R. at 22–23.

Appellant was afforded a Veterans' Administration (now Department of Veterans Affairs) (VA) examination which took place in September and December 1984. R. at 28. Dr. Petro Karanasias, a VA neurologist, did not think that appellant's symptoms "reflected primary neurological pathology" but expressed the opinion that "[i]t is possible that [appellant's] back, knee and foot problems are related." R. at 35. In attempting to reopen his claim, appellant submitted a statement made by Dr. J.E. O'Neil, dated June 1983. Dr. O'Neil could not positively determine whether appellant's pain was related to his pes cavus deformity of the left foot, but he did state that it was possible that secondary stress changes could occur from a poor gait. R. at 28. In addition to Dr. O'Neil's statement, appellant submitted treatment records dating from May 1985, and provided personal testimony at a hearing at the VA regional office in August 1985. *Id.* An August 12, 1986, BVA decision, denied service connection for a ruptured muscle of the left leg, a left-hip disorder, a left-knee disorder, and a back disorder. Again all were claimed to be secondary to appellant's pes cavus deformity of the left foot. R. at 31.

On June 27, 1988, appellant attempted to reopen his claim, seeking secondary service-condition for his left-knee condition. He did this because, without service connection for his left-knee condition, he could not obtain a knee cage from the VA's prosthetic services. R. at 79. Appellant claims that both of his VA treating doctors said that his left-knee condition resulted from his service-connected left foot condition. Appellant submitted the progress notes made by his treating VA physicians, Dr. Bayley and Dr. Candace Jennings. Both are doctors employed at the Davis Park VA Medical Center in Providence, Rhode Island. Dr. Bayley's report, dated April 4, 1988, stated "[osteoarthritis] knee [due to left] foot condition." R. at 39. Dr. Jenning's report, dated May 16, 1988, stated:

> [Appellant] tried to get knee cage as requested by Dr. Bayley but had some difficulty about coverage. The [left] knee [osteoarthritis] is thought to be secondary to an abnormal gait caused by his [left] foot deformity. The [osteoarthritis] will progress [and] when [appellant's knee is] sufficiently disabling, [appellant] will need [a total knee replacement].

R. at 41. Prosthetics were again requested for appellant but, because the VA has continued to deny service connection for his left-knee condition, he has not been able to obtain them. R. at 79–80. At the time these reports were made appellant was receiving cortisone injections for his pain. R. at 41, 78. Appellant also submitted progress notes made by Dr. Bayley, dated June 27, 1988, and by Dr. O'Neil, dated

August 3, 1988. R. at 43. Along with his treating VA physicians' progress notes, appellant resubmitted Dr. Karanasias' report as well as a letter written by Dr. Jame D.C. Gowans, Medical Director of the Arthritis Foundation. The letter, which was dated July 1, 1985, was not previously submitted to the VA. Dr. Gowans stated:

Osteoarthritis is very common and with aging affects a large proportion of the population. The actual cause is not known, but we do know that the osteoarthritis can be aggravated by such things as obesity and unusual stress on certain joints because of limping or other stresses. In this way, your club foot might be an aggravating factor.

R. at 36. A VA orthopedic examination took place on August 22, 1988. Dr. Henry A. Essex, the VA examining physician, gave the following impression:

(1) Cavus deformity of the left foot with some arthritic changes in the joints of the feet.

(2) Osteoarthritis of the left knee manifested by narrowing of the joint space, marked and minimal osteophyte formation as well as atrophy of the thigh.

R. at 46. Dr. Essex then stated "I feel that the osteoarthritis of the left knee has been accelerated somewhat and is partly due to the strain on the left knee occasioned by the foot deformity." R. at 47. Appellant also submitted a radiological report dated September 12, 1988. R. at 48. In addition to the above-mentioned doctors, appellant states that he also received treatment from Dr. Bush, another VA physician; however, none of his reports are found in the record.

By a deferred or confirmed rating decision, dated November 14, 1988, the rating board confirmed and continued the prior disallowance of service connection for appellant's left-knee condition. The rating board did not find appellant's knee condition to be secondary to appellant's left-foot condition. R. at 49. Appellant filed a Notice of Disagreement to the November rating decision. The issue presented in the Statement of the Case was whether new and material evidence was submitted to establish service connection for arthritis of the left knee as secondary to the veteran's service-connected pes cavus. R. at 56. Subsequent to receiving the Statement of the Case, appellant submitted a copy of Dr. John Foley's November 14, 1988, progress note which stated "[osteoarthritis] of knee possibl[y due] to cavus foot deformity." R. at 62. Dr. Foley is also a VA physician. Appellant also submitted a letter from Dr. Edward V. Lally, of Roger Williams General Hospital of Brown University, who, although not having directly examined appellant, believed that based on the information provided to him by appellant, it was "possible that a foot problem [could] cause abnormal stress on the knee and [that] this is perhaps what has happened" to appellant. R. at 64.

Appellant presented personal testimony at a hearing on March 30, 1989. In his testimony, appellant questioned the reasoning behind his denial when, although having arthritis in both knees, as evidenced by 1986 X-rays, he was having problems only in his left knee. R. at 76. This question was not resolved by V.R. Davidson, the Hearing Officer, when he affirmed the rating decision denial. He found that the opinions of the VA physicians, offered by appellant, were "stated in qualifying terms and [did] not establish that [appellant's] left knee condition [was] proximately due to or the result of his service-connected left foot condition." R. at 94. Mr. Davidson did not provide any further explanation. Appellant's claim was denied by the Board in its June 4, 1990, decision. Appellant made a timely appeal to this Court. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

In determining whether to reopen a prior disallowed claim, the Board must evaluate the claim under the two-step analysis discussed in *Manio v. Derwinski*, 1 Vet.App. 140 (1991). The first step is to determine whether appellant has submitted new and material evidence. The Board has not given the Court adequate information to determine whether new and material

evidence was found. Whether evidence is new and material is a conclusion of law. *See Colvin,* at 173–74. Under 38 U.S.C. § 7261 (formerly § 4061), conclusions of law by the BVA are not entitled to judicial deference by this Court. Therefore, the Court can examine the evidence and make its own determination.

▮▮▮ In determining whether evidence is new and material, we look to 38 C.F.R. § 3.156 (1991) and *Colvin.* A reopening is justified, if there is a "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin,* at 174 (quotations omitted). Here, the new evidence submitted consisted of progress notes by Dr. Bayley, Dr. Jennings, and Dr. Foley, letters from Dr. Gowans and Dr. Lally, results from a VA examination, and appellant's personal testimony. None of the evidence submitted is cumulative of the evidence considered in the 1986 decision. All of the items submitted bear directly on the issue in dispute and, if believed, raise the reasonable possibility of a different decision by the BVA. We hold this evidence to be both new and material.

▮▮▮ In reopening a case, the Board must consider all of the evidence, both old and new, and provide reasons or bases why it either accepts or rejects the evidence. *See* 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)); *Gilbert v. Derwinski,* 1 Vet. App. 49, 56–57 (1990); *Sammarco v. Derwinski,* 1 Vet.App. 111, 112–14 (1991). Appellant was entitled to have his claim reopened because he submitted new and material evidence. Therefore, the BVA had to consider all the evidence. The decision does not meet this standard because it fails to explain adequately why the Board determined that appellant's left-knee arthritis was not caused by his left-foot condition, or, in the alternative, why the increase of his left-knee arthritis was not caused by his left-foot condition, and thus secondarily service-connected. Instead, after reciting the new evidence submitted, which supports the argument of secondary service connection, the Board simply states:

It is readily apparent, however, that these physicians did not review the medical data in the claims folder that is available to the Board.

Nevertheless, it is the Board's opinion that the generalized nature of the veteran's arthritis which was initially shown in the spine and hips and subsequently in both knees militates against secondary service connection, and that the arthritis is the result of the aging process. It has been pointed out by at least one VA orthopedist, [that] the arthritis of the left knee had been accelerated by the service-connected cavus deformity, but this does not approach the standard of a direct causal relationship necessary to establish secondary service connection.

Therefore it is unlikely from a clinical, X-ray, and evidentiary standpoint that the veteran's arthritis of the left knee is causally related to service-connected left pes cavus. For these reasons, we find that a new factual basis for allowance of the claim has not been presented. We have considered the doctrine of reasonable doubt, but find the facts of this record raise no such doubt.

*Tobin,* BVA 90–17630, at 6.

▮▮▮ First of all, it is not "readily apparent" that the physicians that treated appellant had not examined his medical records. Drs. Bayley and Jennings, both VA physicians, are appellant's treating doctors. Secondly, the Board cannot make medical determinations which refute medical conclusions found in the record with its own unsubstantiated medical conclusions. As this Court has previously stated:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § [7109]; *Murphy v. Derwinski,* U.S.Vet.App. No. 90–107, slip op. at 4 [1 Vet.App. 78, 81]

(Nov. 8, 1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Colvin*, at 175. *See also Connolly v. Derwinski*, 1 Vet.App. 566, 569–70 (1991) (remanding in part for the BVA to explicitly state and discuss the medical evidence it relies upon in determining whether appellant actually suffers from Meniere's disease, and, if so, what is the relationship between that disease and appellant's in-service ear condition).

It may be that appellant's initial arthritis in both his left and right knees is not service-connected and that it is only the increase in the amount of arthritis in appellant's left knee which is secondary to his service-connected left-foot disorder and, therefore, service connected. The Board has failed to address either issue directly. 38 C.F.R. § 3.310(a) (1991) states:

> Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

Appellant has presented statements from at least four physicians to the effect that his left-knee condition is related to his service-connected left-foot condition. The Board has not cited any evidence to the contrary. Even if appellant's original arthritis was not caused by appellant's left-foot disorder, the doctors' statements support a finding of aggravation of arthritis in the left knee. That aggravation constitutes an increase in the disability. Under section 3.310(a), such an *increase* in "[d]isability proximately due to or the result of a service-connected disease or injury shall be service connected." The left knee is worse than the right knee. Determining whether the service-connected disability caused the bad knee or determining whether the left knee is worse than the right knee due to the service-connected disability is a determination that the Board must make under section 3.310(a). Such a determination re-

quires an adequate statement of reasons or bases.

Beyond simply stating that the benefit of the doubt did not apply in this case, the Board did not consider the doctrine and, further, did not supply reasons or bases for rejecting it. 38 U.S.C. § 5107(b) (formerly § 3007(b)) provides that when "there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant." Therefore, "when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that [the] veteran prevails ... By tradition and by statute, the benefit of the doubt belongs to the veteran." *Gilbert*, at 54. *See also Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–70 (1991); *Willis v. Derwinski*, 1 Vet. App. 63, 66 (1990); *O'Hare v. Derwinski*, 1 Vet.App. 365, 366–67 (1991).

Here, based on the evidence discussed above, the Board has failed to show why the evidence of record is not, at a minimum, in "equipoise." Although the evidence is not sufficiently unequivocal to warrant a determination at this point that the board's rejection of it is "clearly erroneous" under 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)) and therefore must be reversed, *see Meister v. Derwinski*, 1 Vet. App. 472 (1991), the evidence of record all points toward service connection and would warrant reversal unless the Board convincingly and properly otherwise justifies. *Cf. Jones v. Derwinski*, 1 Vet.App. 210, 216–17 (1991).

The Board also failed to comment on appellant's sworn personal testimony. *See Ashmore v. Derwinski*, 1 Vet.App. 580, 583 (1991) (remanded in part to make explicit credibility findings with respect to appellant's testimony); *Smith v. Derwinski*, 1 Vet.App. 235, 237–38 (1991) (remanded in part to determine the credibility of appellant's personal, sworn testimony); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169, 170 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of appellant's personal, sworn testimony as

evidence); *Webster v. Derwinski*, 1 Vet. App. 155, 159 (1991) (remanded in part for the Board to provide reasons or bases in assessing the sworn testimony of appellant and his physician); *Ohland v. Derwinski*, 1 Vet.App. 147, 149–50 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of the lay evidence provided by appellant and his wife). Also, as noted above, like the hearing officer below, the BVA failed to explain adequately why appellant's increased arthritis in his left knee was not the result of his service-connected left-foot disorder.

### III. CONCLUSION

The Secretary's motion for summary affirmance is DENIED. The June 4, 1990, BVA decision is VACATED, the Court retains jurisdiction, and the matter is REMANDED to the BVA for readjudication in accordance with this opinion. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision."). The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.