**Mary Lou ROMEO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1948.**

United States Court of Veterans Appeals.

Aug. 6, 1993.

Karl E. Osterhout, Pittsburgh, PA, was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Ralph G. Davis, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

Appellant, the widow of World War II veteran Patsy A. Romeo, appeals a July 19, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to (1) service connection for the cause of the veteran's death and (2) an increased evaluation for the veteran's post-traumatic stress disorder (PTSD), for purposes of accrued benefits. A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). Because the Board failed to provide adequate reasons or bases for its

denial of service connection for the cause of the veteran's death and for its conclusion that the veteran was entitled to no more than a 30% evaluation for his service-connected PTSD, and also failed to consider whether the veteran was entitled to a total rating based on individual unemployability, the decision will be vacated and the matter remanded for readjudication consistent with this opinion.

## I. Background

The veteran served on active duty in the United States Army from September 1943 to February 1946, service that included combat duty during World War II. During service, he was treated for a black widow spider bite to the left upper arm, scabies, and an injury to his left knee. Service medical records do not reveal any complaints of or treatment for a psychiatric or liver disorder during service. After his discharge, the veteran sought service connection for a psychiatric disorder which he claimed was the result of the black widow spider bite during service. In decisions dated June 1946, October 1947, and December 1947, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) denied service connection for a nervous or psychiatric disorder.

In January 1950, the veteran was hospitalized in a VA medical center for acute infectious hepatitis. In a decision dated March 1950, the RO denied service connection for infectious hepatitis, finding that it was neither incurred in nor aggravated by service, but granted service connection for scabies, residuals of a spider bite, and a scar of the left knee, rating each as 0% disabling, based on additional evidence of record. In October 1978, the veteran sought to reopen his claim for service connection for a psychiatric disorder. During a VA special psychiatric examination, he claimed that he had become addicted to heroin as a result of the black widow spider bite. The examining psychiatrist diagnosed the veteran with heroin dependence, based on the patient's history; personality disorder with what appeared to be inadequate features; and some symptoms of anxiety. In a rating action dated November 1978, the RO granted service connection for active psychosis for treatment purposes only and denied entitlement to non-service-connected pension. In November 1978, the veteran was hospitalized in a private facility with alcoholic liver disease and gastrointestinal bleeding. He underwent a gastric resection due to peptic ulcer disease, as well as a liver biopsy which confirmed the presence of chronic persistent hepatitis and Laennec's cirrhosis. In a rating action dated August 1979, the RO granted appellant a 100% non-service-connected evaluation for infectious hepatitis with cirrhosis, ulcer disease necessitating surgery, and esophageal varices, and awarded him a permanent and total evaluation for pension purposes.

From May 1980 to February 1983, the veteran attempted to reopen his claim for service connection for a psychiatric disorder through the submission of numerous personal statements. In these statements, the veteran, referring to himself as "the Black Widow" or "Merlin," contended that his current psychiatric condition, liver disorder, and substance abuse were directly related to his service-connected spider bite. In December 1982, he was hospitalized at a VA medical facility after complaining of an inability to sleep. The report listed the final diagnosis as major depressive disorder with psychotic features. In a rating action dated March 1983, the RO confirmed the previous denial of service connection for a psychiatric disorder. In a subsequent rating action dated June 1983, the RO determined that no clear and unmistakable error had taken place in the rating decisions made in June 1946 and October 1947. In a decision dated November 1983, the BVA denied appellant's claim for service connection for a psychiatric disorder and a liver disorder on the grounds that there had been no manifestations of either disorder during service or within one year after separation from service; that there was no evidence of an etiological relationship between his current liver disorder and the spider bite during service; and that there was no clinical evidence establishing a rela-

tionship between his cirrhosis of the liver and his period of service.

In August 1984, the veteran's service representative requested that the RO review the veteran's case to determine whether he was suffering from PTSD. The veteran underwent a VA compensation and pension examination and a social and industrial survey in September 1985. The compensation and pension examination report revealed that, although the veteran had presented a complicated case with a variety of psychiatric symptoms, his symptoms were consistent with PTSD. The report noted that the veteran had indicated that he was involved in the D–Day invasion at Omaha Beach and the Battle of the Bulge and that "he [had been] exposed to many very gruesome scenes during his wartime experience, including seeing young men screaming as parts of their bodies were blown off." R. at 236. The veteran also had recalled mortar shells landing very close to him and having suffered concussions from such mortar fire. The VA psychiatrists diagnosed the veteran with PTSD, chronic; schizophrenia, chronic, paranoid, mild to moderate severity; opiate dependence, in remission; barbiturate dependence, in remission; alcohol dependence, in remission. The results of the social and industrial survey also indicated that the veteran exhibited behavior patterns usually associated with PTSD. The VA social worker noted that although the veteran had been able to work at times, for the most part he had not had any established work history, a problem which, according to the social worker, might have been related to his psychiatric problems. The social worker determined that the veteran should be considered to have an industrial handicap "at least to a partial degree." R. at 243.

In a rating action dated April 1986, the RO denied service connection for PTSD, finding that the veteran did not suffer from PTSD related to his military service, but instead from "pre-morbid personality disturbance, schizophrenia, and multiple substance abuse." R. at 248. In a decision dated October 30, 1988, the BVA denied service connection for PTSD, finding that the veteran's psychiatric symptoms were general in nature and were more closely akin to schizophrenia. R. at 255–56. The veteran filed a Notice of Disagreement (NOD) on August 3, 1988, received a Statement of the Case (SOC) in September 1988, and perfected an appeal to the BVA in November 1988.

On December 16, 1988, the veteran died. His death certificate listed the cause of death as intra-abdominal hemorrhage due to or as a consequence of carcinoma of the liver. In January 1989, appellant filed a VA Form 21–534 (APPLICATION FOR DEPENDENCY AND INDEMNITY COMPENSATION OR DEATH PENSION BY SURVIVING SPOUSE OR CHILD [DIC]). In a rating decision dated May 1989, the RO confirmed and continued the denial of service connection for a psychiatric disorder, to include PTSD. The RO issued a Supplemental SOC to appellant in May 1989. In a decision dated April 1990, the Board granted the veteran service connection for PTSD for purposes of appellant's claim for accrued benefits. In May 1990, the RO assigned the veteran a noncompensable service-connected rating for PTSD, noting that there "were neurotic symptoms which may somewhat adversely affect relationships with others but which did not cause impairment of working ability." R. at 285. Appellant filed an NOD with the May 1990 RO decision in September 1990. In the NOD, appellant claimed entitlement to a 100% evaluation for the veteran's PTSD and requested service connection for the cause of the veteran's death. The RO issued an SOC to appellant in January 1990. In October 1990, the RO denied service connection for the cause of the veteran's death, finding that there were no complaints of or treatment for carcinoma or other related disability while on active duty or within any applicable presumptive period following discharge from service and that there was no evidence that the veteran's service-connected disabilities contributed materially to his demise. R. at 294.

The RO issued an SOC to appellant in December 1990 on the issue of a surviving

spouse's entitlement to accrued benefits by virtue of entitlement of the veteran to service connection for a psychiatric disorder. Appellant perfected an appeal to the BVA in January 1991. In support of her appeal, appellant submitted additional evidence, including (1) a letter from the veteran's attending physician, Dr. Edward L. Bamonte, attached to a copy of the veteran's death summary, which noted that the veteran had expired following surgery for a malignant hepatoma, "most certainly related to his chronic liver disease" (R. at 302); and (2) private and VA treatment records for the period June 1987 to April 1988. In March 1991, appellant's service representative filed a VA Form 1–646 (STATEMENT OF ACCREDITED REPRESENTATIVE IN APPEALED CASE) which cited to various medical textbooks to establish that alcohol and drug abuse are forms of self-help for PTSD; that hepatitis and cirrhosis are causally related to alcohol abuse; and that liver carcinoma is related to hepatitis and cirrhosis of the liver.

In a decision dated July 19, 1991, the Board denied service connection for the cause of the veteran's death and granted the veteran a 30% evaluation for PTSD for accrued benefits purposes. *Mary Lou Romeo*, BVA ＿＿ (July 19, 1991). A timely appeal to this Court followed.

## II. Analysis

The controlling statutory and regulatory law provides that upon the death of a veteran, periodic monetary benefits to which he or she was entitled on the basis of evidence in the claims file at the time of death, and due and unpaid for a period of one year prior to the veteran's death, may be paid to the veteran's spouse. *See* 38 U.S.C.A. § 5121(a)(2)(A) (West 1991); 38 C.F.R. § 3.1000(a)(1)(i) (1992). The application for such accrued benefits must be made within one year of the date of the veteran's death. *See* 38 U.S.C.A. § 5121(c) (West 1991); 38 C.F.R. § 3.1000(c) (1992). A widow's claim for DIC is deemed to include a claim for any accrued benefits. *See* 38 C.F.R. § 3.1000(c): Based on these statutory and regulatory requirements, the Court finds that appellant filed a timely application for DIC to include a claim for

accrued death pension benefits. Accordingly, the Court must now determine whether the BVA erred in denying appellant's claims for service connection for the cause of the veteran's death and for a higher evaluation for the veteran's PTSD, for accrued benefits purposes.

### A. Service Connection for Cause of Veteran's Death

■ Appellant contends that the veteran's death was service connected; she argues that the veteran died from liver carcinoma, associated with hepatitis and/or cirrhosis; that these conditions were related to his long history of drug and alcohol abuse; and that the substance abuse, in turn, was an attempt to self-medicate his service-connected PTSD. As support for this contention, appellant points, first, to the medical opinion of the veteran's treating physician, Dr. Bamonte, who stated that the veteran's malignant hepatoma was "most certainly related to his chronic liver disease," R. at 234; Appellant's Br. at 15. Appellant notes that the Secretary of Veterans Affairs (Secretary) has never solicited or produced an opinion contrary to Dr. Bamonte's. Next, appellant contends here, as she did before the BVA, that Dr. Bamonte's opinion is bolstered by several medical texts, including MERCK'S MANUAL OF MEDICAL DIAGNOSIS; HARRISON'S PRINCIPLES OF INTERNAL MEDICINE; CECIL'S TEXTBOOK OF MEDICINE; and TOM WILLIAMS, POST-TRAUMATIC STRESS DISORDER—A HANDBOOK FOR CLINICIANS. Appellant's Br. at 15. Appellant contends that the medical textbooks show that (1) alcohol and post-necrotic cirrhosis are the most common forms of underlying liver disease in patients with liver carcinoma in the United States; (2) liver carcinoma is predominantly a disease of males and usually arises from a cirrhotic liver; and (3) alcohol and drug abuse are common attempts at self-medication for people with PTSD. *Id.* at 15–16. Finally, appellant states that the lay testimony of record of the veteran and herself corroborate the fact that the veteran's PTSD was causally related to his alcohol and drug abuse, which was causally related to his liver disorder which, in turn, was causally

related to his ultimate liver carcinoma, which resulted in his death. *Id.* at 17.

In order to establish service connection for the cause of a veteran's death, the evidence must show that a disability incurred in or aggravated by service was either the principal cause of death or a contributory cause of death. 38 C.F.R. § 3.312(a) (1992). A service connected disability will be considered to be the principal cause of death when it, either singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related to the cause of death. 38 C.F.R. § 3.312(b) (1992). In defining what constitutes a "contributory cause of death," VA regulations provide:

Contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death, that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection.

38 C.F.R. § 3.312(c)(1) (1992). Further, the governing VA regulations provide:

There are primary causes of death which by their very nature are so overwhelming that eventual death can be anticipated irrespective of coexisting conditions, but, even in such cases, there is for consideration whether there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. In this situation, however, it would not generally be reasonable to hold that a service-connected condition accelerated death unless such condition affected a vital organ and was of itself of a progressive or debilitating nature.

38 C.F.R. § 3.312(c)(4) (1992).

In denying service connection for the cause of the veteran's death, the Board found as fact that "[t]he veteran's death on December 16, 1988, was the overwhelming result of carcinoma of the liver"; that "[c]arcinoma of the liver was not shown in active service, but initially manifested many years thereafter and was not causally related to a service-connected disability"; and that "[t]he service connected disabilities did not contribute materially in producing the veteran's death." *Romeo*, BVA ——, at 6. As its reasons or bases for its findings and conclusions, the Board noted:

... [T]he medical evidence of record does not show that the veteran's service-connected disabilities; particularly, his post-traumatic stress disorder, contributed materially to his demise. It is clear that carcinoma of the liver, which resulted in an intra-abdominal hemorrhage, was so overwhelming in nature that it would have produced death regardless of the effects of disabilities for which service connection had been established during the veteran's lifetime. It is the judgment of this Board, that the veteran's death was not the result of disability which was incurred in or aggravated by service.

*Id.*

■■■ This Court has held in numerous opinions that the BVA may not refute the expert medical conclusions in the record with its own unsubstantiated medical conclusions. *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). *See also Cosman v. Principi*, 3 Vet.App. 503, 506 (1992); *Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (*Hatlestad II*); *Budnik v. Derwinski*, 3 Vet.App. 185, 187 (1992); *Quarles v. Derwinski*, 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski*, 2 Vet.App. 34, 39 (1991). In *Colvin*, this Court noted:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81

(1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

1 Vet.App. at 175. Thus, while the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Id.; see also Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991) (*Haltestad I*); *Gilbert v. Derwinski,* 1 Vet.App. 49, 47 (1990); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). It is not the function of this Court to speculate on the relationship between a veteran's service-connected disabilities and his or her cause of death; rather, it is the function of this Court to decide whether the Board's factual determinations on the issue constitute clear error. *See Shoemaker v. Derwinski,* 3 Vet.App. 248, 254 (1992); *Gilbert,* 1 Vet.App. at 53. In order for the Court to determine whether the BVA's factual findings related to cause of death are clearly erroneous, the Board must ensure that its findings are adequately explained and sufficiently supported by the evidence of record. *See Shoemaker,* 3 Vet.App. at 254.

Here, the Court finds that appellant, by means of the medical opinion and medical treatises of record, has provided competent medical evidence, i.e., evidence which may justify a belief in a fair and impartial individual that the claim is "plausible" or "possible," to meet the threshold well-grounded claim requirement with respect to her claim for service connection for the cause of the veteran's death. *See* 38 U.S.C.A. § 5107(a) (West 1991); *Grottveit v. Brown,* 5 Vet. App. 91, 93 (1993) (where the issue involves medical causation, competent medical evidence which indicates that the claim is plausible or possible is required to set forth a well-grounded claim); *see also Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (for purposes of well-grounded claim requirement, claimant must submit supporting evidence which justifies a belief by a fair and

impartial individual that the claim is plausible). The BVA has rejected this medical evidence based on its own unsubstantiated medical conclusions and without citing to independent medical evidence to support such conclusions. The Board has not cited to any medical authority, such as a medical examination, a medical advisory opinion, or a medical text or treatise, to support its factual determination that there is no etiological relationship between the cause of the veteran's death and his service-connected disabilities. Furthermore, the Board has not provided an analysis of the probative value of the evidence submitted in support of appellant's claim. Accordingly, under *Colvin* and the related case law cited above, the BVA decision as to appellant's claim for entitlement to service connection for the veteran's cause of death must be vacated and the matter remanded for further development.

## B. Increased Rating for PTSD/Total Rating Based On Individual Unemployability

Under the VA's Schedule for Rating Disabilities, a 30% evaluation is warranted for PTSD when there is a definite impairment in the ability to establish or maintain effective and wholesome relationships with people and when psychoneurotic symptoms result in such reductions in initiative, flexibility, efficiency, and reliability levels as to produce definite industrial impairment. 38 C.F.R. § 4.132, diagnostic code 9411 (1992). A 50% evaluation is warranted for PTSD when there is a considerable impairment in the ability to establish or maintain effective and wholesome relationships with people and when psychoneurotic symptoms result in such reductions in initiative, efficiency, and reliability levels as to produce considerable industrial impairment. *Id.* A 70% evaluation for PTSD requires a severe impairment in the ability to maintain effective and wholesome relationships with people and psychoneurotic symptoms resulting in such reductions in initiative, flexibility, efficiency, and reliability as to produce severe industrial impairment. *Id.* A 100% evaluation for PTSD is mandated when the attitudes of all contacts except the most inti-

mate are so adversely affected as to result in virtual isolation in the community, when there are totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic, and explosions of aggressive energy, resulting in profound retreat from mature behavior, and where there is a demonstrable inability to obtain or retain employment. *Id.* In its July 1991 decision, the Board found as fact that the veteran's PTSD was productive of *definite* social and industrial impairment during the one-year period prior to the veteran's death, warranting a 30% evaluation. *Romeo*, BVA ▬▬, at 7.

�as Where the Board rejects a request for a rating increase for a psychiatric impairment, it is required to provide adequate reasons or bases for denying entitlement to a higher rating; these reasons or bases should include (1) an analysis of the probative value of the evidence submitted by or on behalf of the veteran and (2) citations to independent medical authority to support the Board's conclusion on the level of impairment. *See Shoemaker*, 3 Vet.App. at 253–54 (1992); *see also Hood v. Brown*, 4 Vet.App. 301, 303–04 (1993) (Board must explain, in the context of the facts presented, the criteria used in determining the rating category into which the veteran's symptoms fall). The reasons or bases requirement is heightened where the BVA's determination of the level of impairment appears to be inconsistent with its own conclusions and the medical evidence of record. *See Shoemaker*, 3 Vet.App. at 253.

▬ Here, the BVA decision fails to provide adequate reasons or bases for its conclusion that the veteran was entitled to a 30% rating for PTSD, but not to a higher evaluation. In support of the 30% rating, the Board noted:

A review of the VA social worker and the psychotherapy reports, dated during the one-year period prior to the veteran's death, discloses that [PTSD] symptomatology included the veteran's extreme fear of thunder and lightning because they reminded him of exploding guns from his combat service in Vietnam [sic], flashbacks, social avoidance, startle response, and nightmares. The veteran required periodic psychotherapy and medication to alleviate his symptomatology. He led a socially isolative existence and there was no prospect of his engaging in gainful employment. He was also reported to suffer from periodic depression. The above clinical description of the disabling manifestations of [PTSD] during the one-year period prior to the veteran's death allows the Board to conclude that the veteran experienced definite social and industrial inadaptability, thereby, warranting the assignment of a 30 percent evaluation for accrued benefits purposes.

*Romeo*, BVA ▬▬, at 7. (The Court notes that appellant served in World War II, rather than Vietnam as incorrectly stated in the BVA decision.) Since the BVA, itself, determined that the veteran led a socially isolated existence and had no prospect of engaging in gainful employment, and several of the medical opinions of record corroborate this finding, it is at least open to question whether the veteran was entitled to a rating in excess of 30% for his PTSD.

Just as it is not this Court's function to speculate on whether a veteran's service-connected disability was related to his cause of death, it is not this Court's role to determine the level of a veteran's psychiatric impairment. Instead, the Court must decide whether the factual determinations by the BVA regarding the veteran's level of impairment constituted clear error. *Archer v. Principi*, 3 Vet.App. 433, 436 (1992); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990); *Gilbert*, 1 Vet.App. at 52–53. Before the Court may make such a decision, the Board must present the Court with an adequate explanation of its reasoning with respect to its findings on the degree of impairment. *See Hood, supra; Shoemaker, supra.*

In this case, the Board did not provide an analysis of the probative value of the evi-

dence submitted in support of appellant's claim and did not cite to medical evidence of record, advisory opinions, or medical texts or treatises to support its findings concerning the veteran's level of psychiatric impairment. Accordingly, the BVA's decision on this claim must be vacated and the matter remanded for readjudication consistent with this decision.

■ In *Hood*, this Court noted the confusion created by the VA Schedule of Rating's use of the term "definite," which is qualitative in nature, as a level of impairment for PTSD, along with the terms "considerable," "severe," and "total," which are quantitative in nature. 4 Vet.App. at 303–04. On remand, the Board is reminded that the general policy of the VA rating schedule is to determine the average impairment in earning capacity resulting from a specific disability in question. *Id.* at 303; *see also* 38 C.F.R. § 4.1 (1992). Accordingly, under *Hood*, the Board is directed to quantify the veteran's degree of social and industrial impairment resulting from his service-connected PTSD, and not merely to refer to the level of impairment as "definite" merely to indicate that such PTSD actually existed. *See Hood*, 4 Vet.App. at 303–04.

■ The Court also finds error in the Board's failure to consider whether the veteran was entitled to a total disability rating based on individual unemployability, given the evidence in the record suggesting that "there was no prospect of him engaging in gainful employment." *Romeo*, BVA ——, at 7; *see also* R. at 239; *Hood*, 4 Vet.App. at 304 (citing *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (duty to assist extends liberal reading to include issues raised in all documents submitted prior to BVA decision)); *see also* 38 C.F.R. § 4.16(b) (1992) (requiring rating boards to submit to the Director of the Compensation and Pension Service, for extra-schedular consideration, those cases of veterans who are unemployable due to service-connected disabilities, but who otherwise fail to meet the percentage requirements of 38 C.F.R. § 4.16(a) (1992)). Further, in the event that the Board determines, upon readjudication,

that the veteran was entitled to a 70% rating for PTSD, the Board also must consider whether he was entitled to a total rating based on unemployability under 38 C.F.R. § 4.16(c). *See Tripp v. Derwinski*, 3 Vet.App. 173, 176 (1992). On remand, the Board will have the opportunity to address these issues.

### C. Clear and Unmistakable Error in Prior RO and BVA Decisions

■ In her brief, appellant argues that the RO's denial, in 1946 and 1947, of the veteran's claim for service connection for a psychiatric disorder should be set aside because of clear and unmistakable error. Appellant's Br. at 10–13. Additionally, appellant contends that even if the Court does not find clear and unmistakable error in the 1946 and 1947 RO determinations, the RO and BVA decisions of the late 1970's and early 1980's, which denied appellant's claim for service connection for PTSD, must be set aside as clearly and unmistakably erroneous. *Id.* at 13–15. The Secretary, in turn, argues that because these issues were not previously raised before the Board, they are not properly before this Court for review. Appellee's Mot. at 9.

Upon reviewing the record, the Court agrees with the Secretary; the issue of clear and unmistakable error in the earlier RO and BVA decisions was not raised before the Board and, therefore, is not properly before this Court for review. *See Villalobos v. Principi*, 3 Vet.App. 450, 452 (1992); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc). However, since the appeal is being remanded on related matters, the Board will have an opportunity on remand to address appellant's contentions regarding the errors in the earlier decisions.

### III. Conclusion

For the reasons articulated above, the Secretary's motion for summary affirmance is DENIED, and the Board's July 19, 1991, decision is VACATED and REMANDED for disposition in accordance with this opinion. "A remand is meant to entail a critical examination of the justifica-

tion for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). Moreover, if the circumstances warrant, the BVA is authorized and obligated to remand the claim to the RO for further development. *See* 38 C.F.R. § 19.-182(a); *Littke v. Derwinski,* 1 Vet.App. 90 (1990).