Arthur B. SCHULTZ, Claimant–
Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Respondent–
Appellee.

No. 00–7170.

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 18, 2001.

Before NEWMAN, SCHALL, and BRYSON, *Circuit Judges.*

BRYSON, *Circuit Judge.*

### I

Arthur B. Schultz served on active duty in the United States Army from March 1942 to December 1945, from February 1947 to February 1950, and from May 1950 to September 1957. He suffered an injury to his lumbosacral spine when he parachuted into France in 1944. Later, while serving in a counterintelligence unit, Mr. Schultz injured his head and neck in a 1953 automobile accident near Salzburg, Austria.

Mr. Schultz was granted service connection for his lumbar spine injury in 1947 but was assigned a noncompensable rating. That rating was later increased to a rating of 40%. Mr. Schultz's rating for the lumbar spine injury is not at issue in this case.

Following his automobile accident, Mr. Schultz filed a claim for a head and neck injury, but in 1959 a Veterans Administration regional office issued a rating decision

that denied Mr. Schultz service connection for that injury on the ground that the "claimed laceration of head and neck" was "not shown by evidence of record." In another rating decision in 1962, the regional office acknowledged that Mr. Schultz was on active duty from May 1950 to September 1957, but stated that an x-ray of his cervical region "revealed no abnormality."

In 1964 the regional office issued yet another rating decision. This time, the regional office noted that an "[o]rthopedic examination showed discogenic disease of the cervical spine." Although the rating decision correctly identified Mr. Schultz's service dates, it concluded that Mr. Schultz's cervical condition was "apparently due to an automobile accident subsequent to service." The regional office then issued a statement of the case, which stated that Mr. Schultz's cervical spine condition could not be linked to his 1944 parachute jump and that "there is no official record of any residual injury" from the 1953 automobile accident.

In 1968 the regional office issued another rating decision denying service connection for Mr. Schultz's cervical spine condition. The decision correctly identified Mr. Schultz's first period of active service from March 1942 to December 1945, but it erroneously identified his last period of active duty as being from May 1956 (rather than 1950) to September 1957. The decision stated that Mr. Schultz had not been treated for his cervical spine condition while in the service and noted that service connection for that condition had previously been denied "since such condition was not incurred or aggravated in service but caused by a post-service car collision."

In September 1988, Mr. Schultz again sought service connection for his cervical spine condition. The regional office again denied service connection, and Mr. Schultz appealed. The Board of Veterans' Appeals remanded the claim for additional development, but after further proceedings on remand, the regional office continued to deny service connection.

Mr. Schultz again appealed to the Board in September 1993. In an addendum to his appeal dated October 3, 1993, Mr. Schultz submitted as new evidence a doctor's statement about the origin of his cervical spine injury. Mr. Schultz also argued, apparently for the first time, that the series of denials of service connection for his cervical spine condition constituted clear and unmistakable error ("CUE") because those denials were based on the erroneous belief that his automobile accident occurred after his period of active duty had ended.

The Board remanded the appeal to the regional office to consider whether the doctor's statement warranted a change in its decision that the cervical spine condition was not service related. The record does not indicate that the Board addressed Mr. Schultz's argument that the series of decisions denying him service connection had been based on clear and unmistakable error. On remand, the regional office determined that the doctor's statement did not warrant any change of its previous decisions. Mr. Schultz again appealed to the Board from the denial of service connection. In November 1996, the Board determined that Mr. Schultz had submitted new and material evidence sufficient to reopen his claim of entitlement to service connection for his cervical spine disorder.

Meanwhile, in July 1995, Mr. Schultz reported that his primary physician had urged him to give up teaching because his work was putting too much stress on his heart and lungs. Mr. Schultz added that the time he spent on his feet caused pain in his lower back and legs. In December 1996, Mr. Schultz applied for a rating of

total disability due to individual unemployability ("TDIU").

In January 1997, the regional office granted service connection for Mr. Schultz's cervical spine condition, set a 10% disability rating for that condition, and assigned an effective date of February 13, 1988, for that rating. In April 1997, the regional office increased that disability rating to 20%, and in May 1997, the regional office determined that Mr. Schultz was entitled to TDIU, with an effective date of December 23, 1996.

Mr. Schultz again appealed, arguing that the regional office should have granted him a higher disability rating for his cervical spine disorder and that the effective date for his TDIU rating should have been at least as early as February 13, 1988. The Board agreed that the evidence warranted increasing his disability rating for the cervical spine disorder from 20% to 40%; with respect to the TDIU claim, the Board held that the proper effective date was July 27, 1994.

Mr. Schultz appealed the Board's decision to the Court of Appeals for Veterans Claims (the "Veterans Court"). In that appeal, he made three arguments that are relevant here. First, he argued that the Board had erred when it issued a disability rating of only 40% for his cervical spine condition. Second, he argued that the Board should have held that he was entitled to an earlier effective date for his TDIU claim. Third, he argued that the series of decisions beginning in 1959 that denied him service connection for his cervical spine disorder amounted to CUE.

The Veterans Court rejected each of Mr. Schultz's contentions. First, the court held that Mr. Schultz had failed to show clear error in the Board's decision that the disability rating for his cervical spine disorder should be 40%. Second, the court held that Mr. Schultz had failed to show clear error in the Board's determination that there was no evidence on record that would show he had claimed TDIU prior to July 1995. Third, the court dismissed Mr. Schultz's CUE claim with respect to the regional office decisions dating back to 1959. With respect to that issue, the court held that it lacked jurisdiction because the claim had never been presented to the regional office and was therefore not encompassed within any final Board decision.

## II

■ On appeal, Mr. Schultz argues (1) that the series of rating decisions beginning in 1962, which denied service connection for his cervical spine condition, constituted CUE; (2) that the regional office violated due process and pertinent Departmental regulations by failing to notify him that those decisions were predicated on the erroneous belief that he was a civilian at the time of the 1953 automobile accident; and (3) that in light of the evidence of his unemployability, the Veterans Court erroneously failed to order an earlier effective date for his TDIU claim.

The Veterans Court held that it did not have jurisdiction over Mr. Schultz's claim that the regional office decisions beginning in 1962 were all based on clear and unmistakable error. We have jurisdiction to address the issue of the scope of the Veterans Court's jurisdiction, but on the merits of that question, we agree with the Veterans Court that it did not have jurisdiction over the CUE issue that Mr. Schultz sought to bring before it.

By statute, CUE claims must be "submitted to the Secretary and ... decided in the same manner as any other claim." 38 U.S.C. § 5109A. Thus, a CUE claim initially must be made to the Secretary, represented by the regional office. Mr. Schultz acknowledges that he has never presented to the regional office his claim that the series of decisions denying him service

connection for his cervical spine disorder amounted to CUE. Rather, he first claimed CUE as to those decisions in an appeal to the Board in October 1993. That appeal was remanded to the regional office, but it was remanded solely for consideration of additional medical evidence Mr. Schultz had submitted. Mr. Schultz made other references to CUE in later filings before the Board, but he did not raise his CUE claim before the regional office.

■ As the government acknowledged at oral argument, Mr. Schultz is free to file his CUE claim at the regional office at any time, challenging the earlier regional office decisions denying his claim. Because the regional office has never decided that CUE claim, however, the CUE issue has not been the subject of a decision by the Board. Section 7252(a) of title 38 authorizes the Veterans Court to review "decisions of the Board." That court lacks jurisdiction where there has been no Board decision on an issue. *See Maggitt v. West,* 202 F.3d 1370, 1375 (Fed.Cir. 2000); *Ledford v. West,* 136 F.3d 776, 779 (Fed.Cir.1998). We therefore uphold the decision of the Veterans Court that the CUE issue was outside that court's jurisdiction.

The same analysis applies to Mr. Schultz's contention that the rating decisions beginning in 1962 denied him due process and violated departmental regulations by failing to notify him that the decisions were premised on an erroneous understanding of the dates of his active duty service and the fact that the automobile accident occurred while he was on active duty. To the extent that any of those regional office decisions are based on a misapprehension of the correct dates of his service or of the date of his automobile accident, he can seek to overturn those decisions, as indicated above, by contending before the regional office that they are based on clear and unmistakable error.

Mr. Schultz's claims of due process or other procedural error with regard to those decisions do not give him an independent basis for obtaining retroactive compensation unless he can show that the decisions themselves were incorrect.

With respect to the effective date for his TDIU rating, Mr. Schultz argues that the Veterans Court misinterpreted the law relating to inferred claims as set forth in *Romeo v. Brown,* 5 Vet.App. 388 (1993), and *Norris v. West,* 12 Vet.App. 413 (1999). In those cases, the Veterans Court held that where there was evidence of service-connected unemployability, the Board should not have limited its inquiry to the appropriate schedular disability rating, but should have considered whether the veteran was eligible for TDIU.

Mr. Schultz casts his argument as a challenge to the Veterans Court's legal interpretation of the law of inferred claims. He does not raise any arguments about the proper legal interpretation of *Romeo* and *Norris,* however, but instead alleges that the medical evidence in his case suggested unemployability and that the Veterans Court should have treated that evidence as sufficient to raise an inferred TDIU claim. Because Mr. Schultz's argument on this point is simply an assertion that the evidence in his case raised an issue regarding his unemployability, it raises only an issue of the application of law to fact, which is not within the appellate jurisdiction of this court. *See* 38 U.S.C. § 7292.

In sum, we hold that the Veterans Court was correct to rule that Mr. Schultz's challenge to the regional office decisions beginning in 1962 was not properly before the Veterans Court, and we hold that we lack jurisdiction to review Mr. Schultz's challenge to the effective date of his TDIU claim. Because we uphold the Veterans Court on the only issue in this case as to

which we have appellate jurisdiction, we *affirm* the judgment of that court.