Citation Nr: 1237378 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 04-28 170 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUE

Entitlement to service connection for hypertension, claimed as secondary to service-connected Type II diabetes mellitus. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Nigam, Counsel


INTRODUCTION

The Veteran served on active duty from October 1969 to August 1971. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a December 2002 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York. 

The matter was remanded by the Board to the RO via the Appeals Management Center (AMC) in October 2011 for additional development of the record, including obtaining relevant treatment records, obtaining Social Security Administration (SSA) records and obtaining VA examination and medical opinion. After completion of this development the case has been returned to the Board for further appellate consideration. As will be discussed, all of the actions previously sought by the Board through its prior request have been substantially completed as directed. See Stegall v. West, 11 Vet. App. 268, 270-71 (1998); D'Aries v. Peake, 22 Vet. App. 97, 104-05 (2008); Dyment v. West, 13 Vet. App. 141 (1999). VA's duty to assist is met; thus, it is not prejudicial for the Board to proceed with appellate review. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). 

A review of the Virtual VA paperless claims processing system does not reveal any additional documents pertinent to the present appeal. 

Finally, the issues of service connection for prostate cancer, brachial plexopathy, a heart condition and a left leg condition, to include as secondary to the service-connected Type II diabetes mellitus, have been reasonably raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction and refers these matters to the AOJ for appropriate action. 


FINDINGS OF FACT

1. The Veteran is not competent to relate his claimed hypertension to his service-connected Type II diabetes mellitus. 

2. The Veteran is not shown to have manifested complaints or findings referable to hypertension in service, within one year of separation from service, or for several years thereafter; and the currently demonstrated hypertension is not shown to be due to an injury or other event of the Veteran's period of active service or to have been caused or aggravated by the service-connected Type II diabetes mellitus. 


CONCLUSION OF LAW

The Veteran's claimed hypertension is not due to disease or injury that was incurred in or aggravated by active service; nor did it manifest to a compensable degree within one year after service discharge; nor has it been shown to be proximately due to or the result of a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.310 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In this decision the Board will discuss the relevant law which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R.") and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir.") and the Court of Appeals for Veterans Claims (as noted by citations to "Vet. App."). 

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts. 

The Board must determine the value of all evidence submitted, including lay and medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. See Barr v. Nicholson, 21 Vet. App. 303 at 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a). Lay evidence may be competent and sufficient to establish a diagnosis of a condition when:

(1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer);

(2) the layperson is reporting a contemporaneous medical diagnosis, or;

(3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. 

See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (where widow seeking service connection for cause of death of her husband, the Veteran, the U.S. Court of Appeals for Veterans Claims (Court) holding that medical opinion not required to prove nexus between service connected mental disorder and drowning which caused Veteran's death). 

In ascertaining the competency of lay evidence, the Courts have generally held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398 (1995) (flatfeet). Laypersons have also been found to not be competent to provide evidence in more complex medical situations. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (concerning rheumatic fever). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. See Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"); Caluza v. Brown, 7 Vet. App. 498, 511-512 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table). 

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2002). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 

Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). 

VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). The notice must be provided to the appellant prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

However, if VCAA notice was not provided prior to the initial adjudication of the claim or, if provided, was inadequate or incomplete, such an error can be "cured" by providing any necessary notice and then readjudicating the claim, including in a statement of the case (SOC) or Supplemental SOC (SSOC), such that the intended purpose of the notice is not frustrated and the Veteran is given ample opportunity to participate effectively in the adjudication of the claim. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). Defective timing or content of VCAA notice is not prejudicial to a claimant if the error does not affect the essential fairness of the adjudication. Sanders v. Nicholson, 487 F.3d 881, 889 (Fed. Cir. 2007), rev'd on other grounds, Shinseki v. Sanders/Simmons, 556 U.S. __ (2009). 

VA has satisfied its duty to notify by issuing pre- and post-adjudication notice letters in September 2002, November 2003, May 2006 and January 2011. The letters advised the Veteran of what evidence was required to substantiate his claim, and of his and VA's respective duties for obtaining evidence. The May 2006 and January 2011 letters also explained how a disability rating is determined for a service-connected disorder and the basis for determining an effective date upon the grant of any benefit sought, in compliance with Dingess/Hartman v. Nicholson, 19 Vet.App. 473, 490-491 (2006). 

Notice as to the service connection claim was first provided in September 2002. Comprehensive notice in accordance with the requirements of Dingess was not provided until after the December 2002 rating decision on appeal was issued. However, the Veteran was not prejudiced from this timing error because the AMC readjudicated the claim in a July 2012 SSOC. 

Accordingly, prejudicial error in the timing or content of VCAA notice has not been established as any error was not outcome determinative. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency). 

Further, if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome in this case by the following: (1) based on the communications sent to the Veteran over the course of this appeal, the Veteran clearly has actual knowledge of the evidence the Veteran is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to the Veteran by VA, it is reasonable to expect that the Veteran understands what was needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

The duty to assist provisions of the VCAA pertaining to development of evidence have also been met. The claims file contains the service treatment records, VA treatment records and SSA records. The Veteran has provided various lay statements in support of his claim. He has been afforded VA examinations (also known in the record as Disability Benefits Questionnaires or "DBQs"), and accompanying addenda in connection with his claim for service connection in July 1995, January 2002, October 2002, November 2003, October 2011 and November 2011. These examinations, cumulatively, are adequate for purposes of adjudication of the Veteran's claim as, together, they address all of his contentions regarding the nature and onset of his hypertension, and they contain all required examination findings and clear and sufficient reasoning for the diagnoses rendered, as well as nexus opinions addressing the various theories of entitlement upon which the claim may be granted. 

Further, the Board finds that the RO and AMC have substantially complied with the Board's October 2011 remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) ((remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where the Board's remand instructions were substantially complied with)), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). The RO and AMC have advised the Veteran of what evidence would substantiate his claim, obtained outstanding VA treatment records and SSA records, and have scheduled the Veteran for VA examination and medical opinion for the purpose of determining the nature and etiology of the claimed hypertension. 

The Veteran has not made the RO, the AMC or the Board aware of any additional evidence that must be obtained in order to fairly decide the appeal. He has been given ample opportunity to present evidence and argument in support of his claim. Pursuant to 38 C.F.R. § 3.655, all relevant evidence necessary for an equitable disposition of the Veteran's appeal of this issue has been obtained and the case is ready for appellate review. General due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2011). There is no indication in the claims file that there are additional available relevant records that have not yet been obtained. The notification and assistance requirements of the VCAA have been satisfied and the Veteran has been provided a meaningful opportunity to participate in development of his claim. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005). 

The Merits of the Service Connection Claim

The Veteran contends that that he has hypertension that is secondarily related to his service-connected Type II diabetes mellitus. He has not asserted that his current hypertension had its onset during his military service, nor has he claimed that he experienced hypertension within one year of his discharge from service. He is currently service-connected for peripheral vascular disease of the lower extremities, coronary artery disease status-post angioplasty, peripheral neuropathy of the upper and lower extremities, diabetic retinopathy, and loss of use of erectile power, which have all been associated with his Type II diabetes mellitus. 

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that the preponderance of the evidence is against the claim and it must be denied. 38 U.S.C.A. § 5107(b); Alemany v. Brown, 9 Vet. App. 518 (1996); Brown v. Brown, 5 Vet. App. 413 (1993) (under the "benefit-of-the-doubt" rule, only where there exists "an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter," the claimant shall prevail upon the issue). Although the Veteran has been diagnosed with current hypertension, the preponderance of the evidence does not show him to have hypertension that manifested in service or within one year thereafter, or that has been causally or etiologically related to his military service or to a service-connected disability. 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet.App. 247, 253 (1999); 38 C.F.R. § 3.303. 

Demonstration of continuity of symptomatology is an alternative method of establishing the second and third Shedden/Caluza element under 38 C.F.R. § 3.303(b). Barr v. Nicholson, 21 Vet.App. 303 (2007); see Savage v. Brown, 10 Vet.App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet.App. 296, 302 (1999). 

Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet.App. at 495-96; see Hickson, 12 Vet.App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b). 

If a chronic disease is shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, may be service connected, unless clearly attributable to intervening causes. 38 C.F.R. § 3.303(b) (2011). However, continuity of symptoms is required where a condition in service is noted but is not, in fact, chronic or where a diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b) (2011). 

Disorders diagnosed after discharge may still be service connected if all the evidence, including pertinent service records, establishes the disorder was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

Service connection may be demonstrated by showing direct service incurrence or aggravation, as discussed above, or by using applicable presumptions, if available. Combee, 34 F.3d at 1043. Even if a veteran is found not entitled to a regulatory presumption of service connection, the claim must still be reviewed to determine if service connection can be established on a direct basis. Combee, 34 F.3d at 1039. 

As to presumptive service connection, some diseases, including hypertension, are chronic, per se, and therefore will be presumed to have been incurred in service, although not otherwise established as such, if manifested to a compensable degree within one year after service. Even this presumption, however, is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

In order to warrant a 10 percent rating under the General Formula for Diseases of the Arteries and Veins, hypertensive vascular disease (hypertension and isolated systolic hypertension) must be manifested by diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. 38 C.F.R. § 4.104, including Diagnostic Code 7101 (2012). 

Even if the disease is not diagnosed during the presumptive period, a veteran can still receive presumptive service connection by showing, through acceptable medical or lay evidence, characteristic manifestations of the disease to the required degree during the presumptive period, followed without unreasonable time lapse by definite diagnosis. Symptomatology shown in the prescribed period may have no particular significance when first observed, but, in light of subsequent developments, it may gain considerable significance. Cases in which a chronic condition is shown to exist within a short time following the applicable presumptive period, but without evidence of manifestations within the period, should be developed to determine whether there was symptomatology which in retrospect may be identified and evaluated as manifestation of the chronic disease to the required degree. 38 C.F.R. § 3.307(c). 

The service treatment records are without findings of or treatment referable for any hypertension, and on separation examination the Veteran reported being in perfect health. These medical records are highly probative both as to the Veteran's subjective reports and their resulting objective findings. They were generated with a view towards ascertaining the Veteran's then-state of physical fitness and are akin to statements of diagnosis or treatment. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board's decision); see also LILLY'S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rationale that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care). 

The first post-service clinical or lay evidence of hypertension is dated in 1987, a number of years after the Veteran's discharge from service. As the Veteran has not alleged that he experienced hypertension prior to 1987, and as there otherwise is no diagnosis or suggestion of hypertension within a year of discharge, the relevant presumptive provisions are inapplicable. See 38 C.F.R. §§ 3.307, 3.309. 

Also, although the clinical record shows that, starting in 1987, the Veteran was diagnosed with hypertension, which meets the first element of a service connection claim, the second and third elements of a service connection claim, that is medical or lay evidence of in-service incurrence or aggravation of a disease or injury; and medical or lay evidence of a nexus between the claimed in-service disease or injury and the present disability, have not been satisfied. Hickson, 12 Vet. App. at 253. Moreover a continuity of symptomatology has not been demonstrated by the lay or clinical record. Barr, 21 Vet.App. 303. As noted, the Veteran has never asserted that his hypertension is directly related to service, and has specifically framed his claim as that for service connection on a secondary basis. Further, the clinical record fails to show that the Veteran's hypertension is directly related to his service. The Board will therefore proceed with review of the merits of the claim on a secondary basis. 

A disability can be service connected on a secondary basis if it is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(a). Secondary service connection may be established by any increase in severity (i.e., aggravation) of a nonservice-connected condition that is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(b), effective October 10, 2006. See 71 Fed. Reg. 52,744 -52,747 (September 7, 2006). See also Allen v. Brown, 7 Vet. App. 439, 448 (1995); Tobin v. Derwinski, 2 Vet. App. 34, 39 (1991). Where a service-connected disability aggravates a nonservice-connected condition, a Veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen, 7 Vet. App. at 448. 

A claim for secondary service connection requires competent medical evidence linking the asserted secondary disorder to the service-connected disability. Velez v. West, 11 Vet. App. 148, 158 (1998). See also Wallin v. West, 11 Vet. App. 509, 512 (1998) and McQueen v. West, 13 Vet. App. 237 (1999) (both indicating, like Velez, that competent medical nexus evidence is required to associate a disorder with a service-connected disability). 

In short, in order to establish entitlement to service connection on this secondary basis, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical evidence establishing a nexus (i.e., link) between the service-connected disability and the current disability. Wallin v. West, 11 Vet. App. 509, 512 (1998). 

The Veteran has been diagnosed with hypertension and is currently in receipt of service connection for Type II diabetes mellitus, which satisfies the first and second elements of a claim for secondary service connection. Wallin, 11 Vet. App. at 512. However, the third element, a nexus between the two conditions, is not satisfied. 

On VA general examinations in February 1995 and July 1995, a history of hypertension since 1987 was noted, and the Veteran was diagnosed with hypertension. A January 2002 VA hypertension examination report reflects findings that hypertension was first diagnosed in March 1987. An addendum to this report reveals an opinion that although the Veteran's hypertension was diagnosed in 1987 at around the same time as his Type II diabetes mellitus, it was most likely that his hypertension was essential and was not due to his diabetes mellitus. An October 2002 VA hypertension examination shows a medical history significant for hypertension with an onset in 1987. The examiner noted a reported history of syncope in 1999, and a history of blurring of vision and intermittent dizziness and lightheadedness since 1999. The Veteran was again diagnosed with hypertension with an onset of 1987. On VA examination, dated in November 2003, he was yet again diagnosed with hypertension. However, apart from the addendum to the January 2002 VA examination report, these examiners failed to offer opinion as to the etiology of the disorder. Moreover, the addendum report failed to provide any explanation or supporting rationale for the opinion proffered. See Stefl v. Nicholson, 21 Vet.App. 120, 125 (2007) (finding that a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Therefore, the Board accords these examination reports little probative value as to the etiology of the Veteran's hypertension. 

Notably, in his VA Form 9, Appeal to Board of Veterans' Appeals, received in July 2004, the Veteran reported that an endocrinologist at a VA hospital told him that his hypertension was related to his diabetes. However, review of the record is negative for such an opinion. In fact, a March 2005 VA endocrine outpatient consult note reflects a past medical history of hypertension that was considered separately from a history for Type II diabetes mellitus and complications of neuropathy and retinopathy. Furthermore, in August 2005 and January 2006 VA "Physician's Statement for Diabetes" reports, it was noted that the Veteran's diabetes mellitus had visual, neurological and cardiovascular complications that were directly due to diabetes mellitus, or were likely to be caused in part and/or aggravated by the diabetes mellitus, to specifically include peripheral vascular disease, coronary artery disease, neuropathy, and retinopathy. However, hypertension was not identified as a complication of the Veteran's Type II diabetes mellitus in this report. Despite being diagnosed with a variety of medical disorders that have been established as causally related to his Type II diabetes mellitus, at no point in the medical record has the Veteran's hypertension been established as causally related to his Type II diabetes mellitus. 

Most recently, in October 2011 and November 2011, a DBQ hypertension examination was performed and an addendum opinion was provided. On examination in October 2011 the Veteran was diagnosed with hypertension; however, the examiner indicated that the claims file was unavailable for review at the time of the examination, and an opinion as to the etiology of the hypertension could not be provided at that time. On addendum in November 2011, the same examiner opined that the Veteran's hypertension was not proximately due to or aggravated by his Type II diabetes mellitus. The examiner observed that there was no documentation in the claims file of the Veteran's blood pressure from 1987 to 1999. The examiner explained that the onset of the Veteran's hypertension was at the same time as his diabetes mellitus in 1987, and that the records document a period of 26 years, ending in 1996, when the Veteran abused alcohol, which made his blood pressure very difficult to be controlled. The examiner noted that from 1996 to 2011, the Veteran's blood pressure was fairly controlled, and provided a chart of the Veteran's blood pressure results, dated from March 1999 to July 2011. The examiner indicated that diabetes mellitus, peripheral vascular disease, diabetic neuropathy, and erectile dysfunction did not cause the Veteran's hypertension. The examiner observed that the Veteran's serum creatinine was 1.4 and his glomerular filtration rate was normal, and concluded that there was no aggravation of the Veteran's hypertension secondary to his diabetes mellitus based on those results. 

The Board finds that the October 2011 and November 2011 DBQ reports contain adequate discussions of the Veteran's current physical profile, and competently and credibly address the etiology of his symptomatology and diagnosed hypertension. Absent a challenge to the expertise of an examiner, the Board may assume the competence of VA examiners. Cox v. Nicholson, 20 Vet. App. 563, 569 (2007); see also Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (finding that where a Veteran does not challenge a VA medical expert's competence or qualifications, VA need not affirmatively establish that expert's competency). 

Thus, the most persuasive and competent evidence of record weighs against the Veteran's claim of entitlement to service connection for hypertension. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (it is the responsibility of the Board to assess the credibility and weight to be given the evidence) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)); see also Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion he reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board). 

Also, although the Veteran is competent to report observable symptoms of his hypertension, such as syncope, dizziness and blurred vision, as a layperson, he is not competent to give a medical opinion on diagnosis, causation, or aggravation of a medical condition, as he has not indicated that he possesses any education, training, or experience that qualifies him to offer medical diagnosis, statement, or opinion. Bostain v. West, 11 Vet. App. 124 (1998); Routen v. West, 142 F.3d. 1434 (Fed. Cir. 1998). Other than his unsupported statements, there is no evidence of record indicating any etiological relationship between his current hypertension and his service-connected Type II diabetes mellitus. Therefore, service connection on a secondary basis is not warranted. 38 C.F.R. § 3.310; Wallin, 11 Vet. App. at 512. 

VA is statutorily required to resolve the benefit of the doubt in favor of the Veteran when there is an approximate balance of positive and negative evidence regarding the merits of an outstanding issue. However, doctrine is not applicable in this case because the preponderance of the evidence is against the Veteran's claim. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); 38 U.S.C.A. § 5107(b). 

Accordingly, the preponderance of the evidence is against the Veteran's claim for hypertension on a direct, presumptive, or secondary basis. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 


ORDER

Service connection for hypertension is denied. 



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs